WARD T. RICHARDS AND MARY RICHARDS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3304–69, 4057–69.   Filed November 24, 1971.

---

[1] The case of petitioners Homer N. Ackerman and Betty Ackerman, docket No. 4057–69, is consolidated herewith.

*John L. Breckenridge*, for the petitioners.
*John P. Graham*, for the respondent.

### OPINION

HOYT, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income taxes for the calendar year 1967 in the following amounts:

| Petitioners | Docket No. | Deficienc |
|---|---|---|
| Ward T. Richards and Mary Richards | 3304–69 | $414. 36 |
| Homer N. Ackerman and Betty Ackerman | 4057–69 | 511. 50 |

The above consolidated cases present a common issue: Whether certain amounts received by the petitioners as distributions from a profit-sharing retirement plan are taxable to petitioners as ordinary income or as long-term capital gain under section 402(a)(2).[2]

All of the facts have been stipulated and such facts, together with the stipulated exhibits, are incorporated herein by this reference.

Ward T. Richards and Mary Richards are husband and wife, and Homer N. Ackerman and Betty Ackerman are also husband and wife. Each couple timely filed its joint Federal income tax return for the calendar year 1967 with the district director of internal revenue, Cleveland, Ohio. At the time of the filings of their respective petitions, the legal residence of Ward T. Richards and Mary Richards was Cortland, Ohio, and the legal residence of Homer N. Ackerman and Betty Ackerman was Warren, Ohio.

Mary Richards and Betty Ackerman are parties herein solely because they filed joint income tax returns with their respective husbands for the calendar year 1967. Accordingly, Ward T. Richards and Homer N. Ackerman will hereinafter sometimes be referred to as petitioners.

---

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Ward T. Richards and Homer N. Ackerman were employees of Van Huffel Tube Corp. As the result of a representative election conducted by the National Labor Relations Board on petition of the United Steelworkers of America (hereinafter, the union), the union had been certified as the exclusive bargaining representative for all production, maintenance, and plant clerical employees of Van Huffel Tube Corp., with certain exceptions not herein relevant. Petitioners were covered under an employee benefit plan designated as "The Suspended Profit Sharing Retirement Plan of Van Huffel Tube Corporation For Bargaining Unit Employees," hereinafter referred to as the plan, effective as of July 2, 1964. The plan was adopted pursuant to an agreement, dated September 16, 1964, between the union and the Van Huffel Tube Corp.

The agreement with the union included the following provisions:

Section XIX—The Profit Sharing Retirement Plan and Pensions

A. Effective as of July 2, 1964, the present Profit Sharing Retirement Plan of Van Huffel Tube Corporation and Van Huffel Western Corporation shall be separated into two plans. One plan will include only those employees who are not members of the bargaining unit represented by the Union. The other plan will include only those employees who are members of the bargaining unit represented by the Union.

B. The Company has paid to the present Profit Sharing Retirement Plan its contribution for the fiscal year that ended July 2, 1964. Upon separation of this plan as above set forth, the Company will suspend further payments to the plan which includes only the members of the bargaining unit represented by the Union. This will immediately give each member of the bargaining unit a vested interest in the amount that is credited to his account, to be paid to him upon termination of his employment, whether such termination is due to a voluntary quit, a discharge, disability, retirement or death.

C. The Company will put in effect as of July 2, 1964, a pension plan as provided in Exhibit A attached to Exhibit 1 hereto attached and made a part hereof. No retirement benefits other than those specified in the Plan (Exhibit A) will be payable.

In order to effect these provisions of the above agreement, the plan was drafted to provide the following:

### ARTICLE I

#### NAME AND EFFECTIVE DATE

Section 1.1 This separation of the Original Plan shall be known as "The Suspended Profit Sharing Retirement Plan of Van Huffel Tube Corporation For Bargaining Unit Employees" (sometimes hereinafter referred to as the "Suspended Plan").

Section 1.2 Except for the possible transfer of Non-Bargaining Unit Employees to positions within the Bargaining Unit as provided in Article VI, Section 6.4 hereof, no members of the bargaining unit who were not members under the Original Plan on July 2, 1964, can be or become members under the Suspended Plan.

## ARTICLE II

### COMPANY CONTRIBUTIONS

Section 2.1 Van Huffel Tube Corporation and Van Huffel Western Corporation (sometimes hereinafter referred to as the "Company") shall make no contributions to the Suspended Plan, other than that Van Huffel Tube Corporation shall pay the reasonable annual compensation and expenses of the Trustee for its services under the Suspended Plan.

## ARTICLE III

### THE TRUSTEE

‹         *         ‹         *         *         *         *

Section 3.2   The Trustee shall remove from the trust under the Original Plan and hold in trust under this Suspended Plan sufficient assets to equal the amounts which as of July 2, 1964, were credited to the accounts of the Bargaining Unit Employees whose names are set forth in Exhibit A hereto attached, together with an amount equal, as of the date of transfer, to the proportionate or pro rata share of (i) the earnings and losses of the Trust Estate under the Original Plan since July 2, 1964, and (ii) any appreciation or depreciation in value of such Trust Estate since July 2, 1964, less, however, any amounts paid since July 2, 1964, to any terminated Bargaining Unit Employees.

Section 3.3   Upon approval hereof by the Commissioner of Internal Revenue the Trustee shall pay any terminated Bargaining Unit Employee who was terminated after July 2, 1964, and who was not paid upon termination the full amount credited to his account, the unpaid balance of the amount that was credited to his account.

Section 3.4   Notwithstanding the vested interests of the Bargaining Unit Employees the Trustee shall at all times hold the Trust Estate of this Suspended Plan as a common or comingled trust fund.

*         *         *         *         *         *         *

## ARTICLE VI

### BENEFITS

Section 6.1 (a)   Upon death, upon becoming permanently disabled and upon termination of employment due to a break in his continuous service as defined in Section XII of the Basic Agreement (otherwise than upon retirement or other break in his continuous service under conditions which will enable him to qualify for a pension under the Pension Plan for Certain Hourly-Rated Employees of Van Huffel Tube Corporation (sometimes hereinafter referred to as the "Pension Plan")), the member or his beneficiaries shall be paid the full amount that was credited to his account as of the last day of the taxable year preceding such event.

*         *         *         *         *         *         *

## ARTICLE VII

### MISCELLANEOUS

*         *         *         *         *         *         *

Section 7.2   The Company reserves the right to amend this Plan for the purpose of making the same comply with the applicable provisions of the Internal Revenue Code and the Regulations of the Commissioner of Internal Revenue

thereunder as the same now exist or as they may from time to time hereafter be amended, and for the purpose of clarification should it develop in the administration of the Plan and Trust that clarification is necessary or desirable. The Company shall not, however, have the right to amend this Plan in any way which will deprive any member of his vested benefits under the Plan and Trust, or which will alter the basic purpose of the Plan or the Trust, or which will give the Company, directly or indirectly, any right in any part of the Trust Estate, or which will, without their written consent, alter the duties or liabilities of the Trustee or of the Committee.

The plan was determined by the district director, Cleveland, Ohio, to be a qualified employees' trust described in section 401(a) and exempt from tax under section 501(a).

On January 29, 1967, Van Huffel Tube Corp. entered into a new agreement with the union, the original agreement of September 16, 1964, having expired. The new agreement included the following provisions:

### APPENDIX C

1. The Profit Sharing Retirement Plan accounts as of July 1, 1966 (except for such accounts that have since been otherwise settled for the benefit of employees who have already retired after July 1, 1966) shall be segrated [sic] by the Trustee of the Profit Sharing Retirement Plan Trust into two portions (to be designated as the "Disbursable Portion" and the "Continuing Portion" respectively) as follows:

| If the total market value of the account as of July 1, 1966: | Disbursable portion of total account shall be: | Continuing portion of total account shall be: |
|---|---|---|
| $2,000 or more | ½ of amount of account. | ½ of amount of account. |
| $1,000 but less than $2,000 | $1,000 | Amount of account in excess of $1,000. |
| Less than $1,000 | Amount of account | None. |

2. The Company and the Union shall agree on the method which is to be followed in paying out the Disbursable Portion of each Profit Sharing Retirement Plan account; provided, however, that, in any event, such Disbursable Portion will, effective as of January 28, 1967, no longer be included as a part of the value of the employee's Profit Sharing Retirement Plan account which is to be recognized in reducing pension benefits otherwise payable under the Pension Plan.

3. Effective as of January 28, 1967, the value of the continuing portion of an employee's Profit Sharing interest will no longer be applied to reduce the "special payment" under the Pension Plan and will no longer be applied to reduce Severance Pay. Such continuing portion, however, shall be transferred to the Pension Trust at such time as an employee becomes eligible for Pension benefits under the revised Pension Plan, unless such employee elects to receive his continuing portion in the form of a lump sum settlement. In case of such election the actuarial equivalent monthly amount of the continuing portion will reduce the monthly payments to which he is entitled under the Pension Plan. Unless an employee elects to receive his continuing portion in a lump sum, or elects to receive his pension payments under a joint and survivor option, should he die

prior to having received an aggregate amount (of such monthly amounts of pension amounts purchasable with his continuing portion) which shall be at least equal to the total amount of the continuing portion transferred, the balance shall then be paid to his named beneficiary.

In order to carry out the terms of this new agreement, the plan was amended on June 26, 1967. This amendment included the following provisions:

Now, THEREFORE, THIS FIRST AMENDMENT WITNESSETH:

## ARTICLE I

Section 1.1   The Trustee shall segregate the accounts of all employee members under the Plan pursuant to Appendix C of the New Agreement as set forth in such Appendix C and also in recital II above.

Section 1.2   As soon as the earnings of the Trust for the period from January 28, 1967, to and including June 30, 1967, are determined and provided the approval of the Internal Revenue Service to this First Amendment has been received and if such approval has not then been received as soon as such approval is received, the Trustee shall pay to each employee member under the Plan his or her Disbursable Portion, together (in the case of each such employee member who is still a member as of June 30, 1967) with his or her prorata share of the earnings on his or her Disbursable Portion for the period from January 28, 1967, to and including June 30, 1967.

Section 1.3   The total earnings of the Trust for the fiscal year ended June 30, 1967, less the amount of earnings paid out as provided in the immediately preceding Section 1.2 shall be allocated to the members' accounts on the basis of the number of trust units assigned to their respective Continuing Portions as of June 30, 1967.

## ARTICLE II

Section 2.1 The Continuing Portion of each employee member under the Plan and the earnings and appreciations of the Trust Estate from and after June 30, 1967, shall be used and disbursed solely as is set forth in the Plan as modified by Appendix C of the New Agreement.

The amended plan was approved by the district director as continuing to meet the requirements of section 401(a).

Pursuant to the one-half interest distribution provisions and requirements of the amended plan, the amount of $4,537.88 was distributed to petitioner Ward T. Richards on or about August 3, 1967, and the amount of $4,331.67 was distributed to petitioner Homer N. Ackerman on or about August 3, 1967.

In connection with the distributions on or about August 3, 1967, petitioners Homer N. Ackerman and Ward T. Richards each received a letter dated August 3, 1967, from the plan, which enclosed the distribution and which advised that the particular distribution was taxable income and furnished an account of the credit remaining for each in the plan. Such accounting showed that one-half of the respective interests of petitioner Homer N. Ackerman and petitioner Ward T.

Richards were retained in the plan and not distributed. The following is a summary for the dates indicated of the respective interest of petitioners Ackerman and Richards in the plan:

|  | Homer N. Ackerman | Ward T. Richards |
|---|---|---|
| Value of member's account 6/30/66 | $8, 618. 96 | $9, 029. 26 |
| Value of member's account 1/28/67 | 8, 618. 96 | 9, 029. 26 |
| Disbursable portion (½ of balance) | 4, 309. 48 | 4, 514. 63 |
| Earnings to be disbursed | 22. 19 | 23. 25 |
| Total to be disbursed | 4, 331. 67 | 4, 537. 88 |
| Value of continuing portion | 4, 309. 48 | 4, 514. 63 |
| Earnings on continuing portion to 6/30/67 | 378. 11 | 396. 10 |
| Value of continuing portion 6/30/67 | 4, 687. 59 | 4, 910. 73 |
| Earnings—7/1/67—6/30/68 | 37. 16 | 38. 93 |
| Value of continuing portion 6/30/68 | 4, 724. 75 | 4, 949. 66 |

On August 30, 1967, the plan was again amended. This amendment provided as follows:

The Suspended Profit Sharing Retirement Plan of Van Huffel Tube Corporation For Bargaining Unit Employees, effective as of July 2, 1964, as heretofore amended on June 26, 1967, is hereby further amended, effective August 30, 1967, by adding to Article VII thereof the following Section 7.9:

Section 7.9 The word "Company", whenever and wherever it appears in this Plan, shall mean and include Van Huffel Tube Corporation, Warren, Ohio, and its successor or successors and assigns.

On or about September 1, 1967, Youngstown Sheet & Tube Co., an Ohio corporation, purchased all the operating business facilities and assets of Van Huffel Tube Corp. and thereafter continued the business of Van Huffel Tube Corp. as an operating division of Youngstown Sheet & Tube Co. In connection with such purchase and the continued operation of Van Huffel Tube Corp. business, the hourly employees of Van Huffel, including petitioners Ward T. Richards and Homer N. Ackerman, were retained as employees by the Youngstown Sheet & Tube Co.

On September 20, 1967, the plan was further amended to provide as follows:

WITNESSETH THAT:

WHEREAS, on September 1, 1967, The Youngstown Sheet and Tube Company purchased substantially all of the assets of Van Huffel Tube Corporation; and

WHEREAS, pursuant to the agreement of sale The Youngstown Sheet and Tube Company, as successor, assumed the obligations and received all rights and benefits of Van Huffel Tube Corporation under "The Suspended Profit Sharing

Retirement Plan of Van Huffel Tube Corporation for Bargaining Unit Employees," as amended (hereinafter referred to as the "Plan") ; and

WHEREAS, effective August 30, 1967, the Plan definition of "Company" was amended to include the successor or successors and assigns of Van Huffel Tube Corporation; and

WHEREAS, Article VII, Section 7.2 of the Plan provides *inter alia* that the Plan may be amended for the purpose of clarification.

Now, THEREFORE, the Plan is hereby amended, effective September 1, 1967, as follows:

1. Article I, Section 1.1 is amended to read in its entirety as follows:

Section 1.1 This separation of the Original Plan shall be known as "The Suspended Profit Sharing Retirement Plan for Bargaining Unit Employees of Van Huffel Tube Corporation, a Division of The Youngstown Sheet and Tube Company" (sometimes hereinafter referred to as the "Suspended Plan").

2. Article VII, Section 7.9 is amended to read in its entirety as follows:

Section 7.9 The word "Company", whenever and wherever it appears in this Plan, shall mean and include Van Huffel Tube Corporation, a Division of The Youngstown Sheet and Tube Company.

3. In all other respects, the Plan, as heretofore amended, continues without change and is hereby ratified and approved.

The plan, as amended August 30, 1967, and September 20, 1967, was approved by the district director as continuing to meet the requirements of section 401(a).

The respective petitioners treated the amounts received by them on August 3, 1967, pursuant to the one-half interest distribution under the plan, as long-term capital gain rather than ordinary income on their calendar year 1967 Federal income tax returns. Thus petitioner Richards reported the distribution as taxable long-term capital gain in the amount of $2,268.74. Petitioner Ackerman reported the distribution as taxable long-term capital gain in the amount of $2,165.83.

In his notices of deficiency, dated April 4, 1969, sent to the respective petitioners, the Commissioner determined that the amounts received by the petitioners as distributions under the plan represented ordinary income rather than long-term capital gain, on the grounds that the distributions made to petitioners were not distributions of the total distributions payable with respect to them, nor were the distributions made on account of separation from the service of their employer, as required by section 402(a)(2).

The issue presented for our decision is whether the distributions made to the petitioners in August 1967 should be taxed to them as ordinary income under the provisions of section 402(a)(1)[3] or as long-

---

[3] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.—* * * The amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities). * * *

term capital gains under the provisions of section 402(a)(2).[4] Generally, long-term capital gains treatment of taxable distributions from an employee's trust is permitted under section 402(a)(2) only if there is a total distribution within the 1 taxable year of the distributee of all funds to the credit of the distributee in the trust and only if the payment is made, among other specified events, on account of his separation from the service of his employer.[5]

Petitioners initially have asserted that the purchase of Van Huffel Tube Corp.'s assets by Youngstown Sheet & Tube Co., and petitioners' continuing to work in the business operations after the transfer of the assets, constituted a "separation from the service" of their employer by petitioners as required by section 402(a)(2), in that petitioners terminated their employment with Van Huffel Tube Corp. and thereafter became employees of a different corporate employer, Youngstown Sheet & Tube Co.

However, as sharply as the issue might have been drawn for a decision on this point in the case before us, we need not explore the maze suggested by decided cases, such as *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964), and *Victor S. Gittens*, 49 T.C. 419 (1968). Our decision here must rest on other grounds.

Even if we were to decide that the sale of assets and corresponding change of corporate employer from Van Huffel Tube Corp. to Youngstown Sheet & Tube Co. constituted a "separation from the service" under section 402(a)(2), it is clear from the facts of record that the distributions to these petitioners were not *on account of* any possible separation of service. The amended plan, which purported to provide and authorize the particular distribution, itself specifically stated that

---

[4] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
  (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

    *        *        *        *        *        *

    (2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

[5] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
  (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

    *        *        *        *        *        *

    (3) DEFINITIONS.—For the purpose of this subsection—

    *        *        *        *        *        *

    (C) The term "total distributions payable" means the balance to the credit of an employee which becomes payable to a distributee on account of the employee's death or other separation from the service, or on account of his death after separation from the service.

the division of the fund in the plan and the distribution thereunder arose by and through the earlier agreement between Van Huffel Tube Corp. and the union. The distribution to the petitioners was on account of the express terms of the amended plan, which terms were determined solely according to the earlier agreement with the union. See *Ford E. Wilkins*, 54 T.C. 362 (1970) ; *Whiteman Stewart*, 53 T.C. 344 (1969).

There is no evidence before us to support petitioners' assertion that the distribution was made "in anticipation of, and because of" the subsequent substitution of Youngstown Sheet & Tube Co. for Van Huffel Tube Corp. as petitioners' employer.

In addition to the failure of petitioners to establish the distributions as being "on account of" a separation from the service, there has been no *total* distribution as required by the statute.

Petitioners assert that the amended plan providing for the one-half interest distribution was in violation of the original terms of the agreement with the union which served as the basis for such plan. Petitioners point to "Section XIX—The Profit Sharing Retirement Plan and Pensions," subsection B, and also to sections 3.2 and 3.3 of the plan, as giving petitioners a vested interest in the full amount that was credited to their respective accounts as of July 2, 1964, and providing such amount to be paid to petitioners on termination of their employment. It is claimed that the amendment to the plan to provide for withholding one-half of petitioners' interest as a continuing portion in the plan violated the original terms of the plan and the agreement with the union. Therefore, petitioners continue, they "should have" received their *full* share in the plan upon the distribution and thus should fall within the "total distribution" requirement as having their rights fixed for a total distribution as of the termination of their employment with Van Huffel Tube Corp.[8]

We find this argument without merit. The amended plan did not violate any of petitioners' vested interests. It only provided that a one-half interest be distributed *at that time*, and that the remaining one-half interest be continued and applied for the petitioners' benefit under the newly established pension plan in accordance with "Appendix C, subparagraph 3" of the January 29, 1967, union agreement as referred to in the first amendment to the plan.

However, this one-half interest distribution was not on account of any "termination" of employment so as to invoke sections 3.2, 3.3 and 6.1 of the plan; rather, the distribution was pursuant to the new union agreement, and at that point petitioners could *not* have claimed rights

---

[8] See, in this respect, *Mary Miller*, 22 T.C. 293 (1954), affirmed per curiam 226 F. 2d 618 (C.A. 6, 1955) ; *Lester B. Martin*, 26 T.C. 100 (1956).

288

to a total distribution as there had not yet then been any alleged termination of employment. Thus, with respect to the distribution, petitioners could in no way claim total distribution rights under the "terminated employee" provisions of the plan.

The plan provisions providing for distributions upon termination of employment could *only* come into effect, if at all, when Youngstown Sheet & Tube Co. became petitioners' new employer, arguably "terminating" the petitioners' employment with Van Huffel Tube Corp. However, at the time of the sale of the corporate assets, the rights of petitioners to benefits according to the provisions of the plan must be determined under limitations of the plan itself then in effect. At the time Van Huffel Tube Corp.'s assets were sold to Youngstown, the plan had been further amended to provide that Van Huffel's successor was covered as employer under the plan. Thus, the corporate employer relation never "terminated," according to *the provisions of the plan* itself. Therefore, petitioners did not receive, nor did the amended plan violate any right to receive, a total distribution of their interest in the plan. Their argument to this effect must be rejected.

As petitioners have failed to establish that they meet the requirements of section 402(a)(2), the distributions herein involved are taxable to the petitioners as ordinary income under the provisions of section 402(a)(1), and respondent's determination to that effect must be sustained.

*Decisions will be entered for the respondent.*